KELLY, TROTTER & FRANZEN
MICHAEL J. TROTTER (SBN 139034)
mjtrotter@kellytrotter.com
STEVEN J. WYSOCKY (SBN 271257)
sjwysocky@kellytrotter.com
111 W. Ocean Blvd., 14th Fl.
P.O. Box 22636
Long Beach, CA 90801-5636
Phone: (562) 432-5855

Attorneys for Plaintiff DONALD HALL, individually and on behalf of the general public and all others similarly situated

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DONALD HALL, individually and on behalf of the general public and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIAT CHRYSLER AMERICA US LLC aka FCA US LLC, formerly known as CHRYSLER GROUP LLC, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 8:21-cv-00762-SSS-DFM<br><br>Assigned to: Hon. Sunshine Sykes<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date : March 21, 2025**<br>**Time: 2:00 p.m.**<br>**Courtroom : 2** |

PLEASE TAKE NOTICE that on March 21, 2025 at 2:00 p.m. or as soon as the matter may be heard in Courtroom 2 of the above-captioned court, located at the George E. Brown, Jr. Federal Building and Courthouse, 3470 Twelfth Street Riverside, CA 92501-3801, the Honorable Sunshine S. Sykes presiding, Plaintiff Donald Hall, on behalf of himself and all others similarly situated, will move this Court for an order granting final approval of the parties' proposed Settlement Agreement. FCA US LLC does not object to the motion in the context of the parties' proposed settlement.

The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of Motion for Final Approval, the Court's order from September 18, 2024 granting preliminary approval of this matter, the accompanying declarations of Michael J. Trotter and Steven J. Wysocky, any oral argument that is held regarding this motion, the complete record in this litigation, and such other matters as the Court may consider.

Dated: February 14, 2025                KELLY, TROTTER & FRANZEN

_____
STEVEN J. WYSOCKY
Attorneys for Plaintiff
Donald Hall

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a breach of contract putative class action relating to the terms of a lifetime service contract offered by the defendant, FCA. Each of the 587 class members purchased the lifetime service contract for their Chrysler, Dodge or Jeep vehicles utilizing separate consideration at the same time they purchased their vehicle. Each of the class members then had their lifetime service contracts cancelled by FCA, due to what FCA claimed was their failure to present their vehicles for inspection. The inspection term relied on by FCA was present only in the vehicle's powertrain warranty. Plaintiff believed that this constituted a breach of contract and filed suit relative to the cancellation of his lifetime service contract on behalf of himself and all others similarly situated.

On September 18, 2024, the Court granted preliminary approval of the Settlement. See Dkt No. 110. Per the Court-approved notice plan, direct individual notice of the Settlement was disseminated to the 587 Class Members via mail. Class members had until January 31, 2025 to object or request exclusion. As of February 10, 2025, **the settlement class administrator reported that no such objections or exclusions were received.** Class members have until March 17, 2025 to postmark a claim form to the administrator, and at this point, with more than one month to go, 12 claims have been thus far received. The Fairness Hearing is scheduled for March 21, 2025 at 2:00 p.m. By this motion, Plaintiffs respectfully request that the Court conduct a final review of the Settlement and approve the Settlement as fair, reasonable, and adequate.

With no objections or requests for exclusion, the standard for final approval is met in this case as detailed below.

## II. FACTUAL BACKGROUND

Plaintiff is the initial purchaser and current owner of a 2008 Jeep Liberty. As part of that purchase, and for separate consideration, Mr. Hall purchased a lifetime service contract for the vehicle. In July of 2020, Plaintiff brought the vehicle to a

Chrysler dealership in Signal Hill, California to repair the air conditioner. After the repair was completed, the dealership service manager informed Plaintiff that the repair would have been covered by the service contract, but that the service contract had been terminated by FCA because the vehicle had not been inspected according to a 5-year inspection requirement that was contained in the powertrain warranty. Plaintiff had several other repairs that he contends should have been covered under the terms of the service contract, but which were not due to the contract being voided by FCA.

### A.   Procedural History

This civil action was filed on April 21, 2021, and originally included several claims for relief, including for breach of contract, breach of warranties, civil RICO, and violation of California's Unfair Competition Laws. After FCA moved to dismiss, the Court granted their motion with prejudice. An appeal then followed to the Ninth Circuit Court of Appeals, which reversed as to the breach of contract claim in an unpublished decision. A First Amended Complaint was filed that contained claims for both breach of contract and breach of warranty. [Doc. 42.] After FCA again moved to dismiss, the District Court granted it in part, finding that the claims were duplicative. [Doc. 54.] As such, the case proceeded forward on a single cause of action for breach of contract.

### B.   Discovery and Motions to Compel

The Parties conducted significant formal written discovery before settlement, including several motions to compel which were heard before the assigned magistrate on this case, resulting in supplemental responses of the defendant being compelled. This ultimately put the case at a position where mediation was practical.

### C.   Mediation

On January 16, 2024, the Parties attended mediation with Brad Winters, Esq. of JAMS, an experienced and respected national mediator on issues involving automotive cases. Following a full day of mediation, the Parties reached an

agreement. The Parties thereafter continued to negotiate at arms' length the balance of the terms contained in the long-form Settlement Agreement.

### D. Preliminary Approval

The Court granted preliminary approval of the class action settlement in its September 18, 2024 order. Thereafter, notice was sent as directed by the class administrator, including creation of a settlement website: https://lifetimecontractsettlement.com/. A toll free number was also created where class members could call with any questions: (833) 739-5988.

## III. SUMMARY OF PROPOSED SETTLEMENT

### A. Settlement Terms

The parties agreed that upon receipt of a valid claim, FCA will reimburse one-half of the amount the Claimant paid or had paid on their behalf for the purchase of the lifetime service contract. In addition, class representative Don Hall would receive a service award of $5,000, that the settlement administrator expenses would be paid directly by FCA, and that FCA would pay class counsel and amount up to $375,000, for fees, costs and expenses, inclusive. Counsel has subsequently filed a motion for attorney's fees and costs in the amount of $368,181.76, providing a longer notice period to the class than would be typical for a standard motion.[1] The average amount of each claim is approximately $1,100.

### B. Settlement Administration and Notice to Class

Kroll was appointed as the settlement administrator, who will provided notice to the 587 class members.

### C. Released Claims

In exchange for the refund/reimbursement of one-half of the claimant's purchase price, the settlement agreement provides for the release of all claims, causes of action, demands, debts, suits, liabilities, obligations, damages, actions, rights of

---

[1] It is worth noting that even with the attorney's fees motion filed prior to the objection deadline, still no objections were received by the settlement administrator indicating consent to the request amongst class members. "The absence of objections or disapproval by class members to Class Counsel's fee request further supports finding the fee request reasonable." *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at *21 (C.D. Cal. June 5, 2005)

action, remedies of any kind and/or causes of action of every nature and description, whether known or unknown, asserted or unasserted, foreseen or unforeseen, regardless of any legal theory, existing now or arising in the future, **by Plaintiff and any and all Class Members relating to the termination or cancellation of a lifetime service contract because of FCA US's termination of a lifetime limited powertrain warranty**, whether arising under statute (including a state lemon law), rule, regulation, common law or equity, and including, but not limited to, any and all claims, causes of action, rights or entitlements under any federal, state, local or other statute, law, rule and/or regulation, any claims relating to violation of California Business and Professions Code Sections 17200-17209, California Business and Professions Code Section 17500, or the California Consumer Legal Remedies Act (California Civil Code Section 1750-1784), any consumer protection, consumer fraud, unfair business practices or deceptive trade practices laws, any legal or equitable theories, any claims or causes of action in tort, contract, products liability, negligence, fraud, misrepresentation, concealment, consumer protection, restitution, quasi contract, unjust enrichment, express warranty, implied warranty, secret warranty and/or any injuries, losses, damages or remedies of any kind, in law or in equity, under common law, statute, rule or regulation, including, but not limited to, compensatory damages, economic losses or damages, exemplary damages, punitive damages, statutory damages, restitution, recovery of attorneys' fees or litigation costs, or any other legal or equitable relief.

## IV.    **FINAL APPROVAL SHOULD BE GRANTED**.

###     A.    **The Class Action Settlement Process**

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); see also 4 Newberg on Class Actions § 11.41 (4th Ed. 2002) (citing cases). The traditional means for handling claims like

those at issue here - individual litigation - would require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Class Members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The Manual for Complex Litigation describes a three-step procedure for approval of class action settlements:

(1) Preliminary approval of the proposed settlement at an informal hearing;

(2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) A final approval hearing at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

The first two steps in this process have occurred. With this motion, Plaintiffs respectfully request that the Court take the third and final step in the process by granting final approval of the settlement.

**B. The Settlement is Fair, Reasonable, and Adequate, and Should be Approved.**

It is well settled that the law favors the compromise and settlement of class action suits. *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation....").

A proposed class action settlement should be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When assessing a proposed settlement, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the

product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

Courts in the Ninth Circuit consider a number of factors in evaluating class settlements, recognizing that "it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). The Ninth Circuit has set forth the following list of factors to be considered: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village*, 361 F.3d at 575.

Application of these factors here confirms that the settlement is fair, reasonable, and adequate, and should be given final approval.

### 1. The Strength of Plaintiffs Case and Inherent Risks of Further Litigation/Ability to Maintain Class Certification.

The factors set forth in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011) have been met here. Plaintiff believed his case was suitable for certification on the basis there was a common design of cancelling service contracts that impacted 587 California consumers, who purchased these contracts with separate consideration from the overall vehicle purchase price. Plaintiff's counsel formed this belief on the results of our investigation reflecting that there was a common practice of cancelling service contracts following the failure to have the vehicle inspected pursuant to a provision in an entirely separate document that could be established using representative testimony that would not require separate mini-trials on liability as to each possible claim member. With the Ninth Circuit finding that the provisions of the service contract were ambiguous, and controlling authorities dictating that ambiguous terms are construed against the drafter, i.e. FCA

US (particularly in contracts of adhesion). [Wysocky Dec. ¶ 12.] Whether the law of the case doctrine would apply to this is still disputed between the parties.

However, FCA US, through its counsel, also presented several significant defenses to the claims as well as good faith objections to Plaintiff's ability to certify the class. FCA US maintained that resolution of these issues would require individualized analysis of the nature of the Class members' basis for cancellation such that these issues would predominate and certification would be unlikely. Thus, while Plaintiff believed and continues to believe this is a strong case for certification, significant risks exist associated with class certification and potential defenses. We recognized and considered the inherent risks and uncertainty of litigation, including: (i) denial of certification; (ii) if certified, decertification; (iii) a grant of summary judgment or adjudication; (iv) the need for a unanimous jury; (v) the possibility of an unfavorable, or less favorable, result at trial; (vi) the possibility post-trial motions may result in an unfavorable, or less favorable, result than trial; and, (vii) the possibility of an unfavorable, or less favorable result on appeal, and the certainty that process would be lengthy. Continued litigation would take substantial time, create risk of no recovery, and possibly confer no Class benefit. [Wysocky Dec., ¶ 13.] It must also not be forgotten that this case was previously dismissed for failure to state a claim.

In the opinion of counsel for the plaintiff, the proposed settlement yields a prompt, certain, and substantial Class recovery without requiring additional time or judicial resources. Based on my education, training, experience, and research, I believe that the settlement in this case was reasonable and in the best interest of both the plaintiff and the class. This represents a substantial and meaningful recovery to each member that is far beyond nominal recovery amounts that are seen with so many consumer class actions. Additionally, the fact that every class member upon claims presentation will receive 50 percent of the amount they each individually paid as a refund demonstrates both objective and equitable fairness in their treatment. [Wysocky Dec., ¶ 13.]

Settlement negotiations were prolonged and hard-fought. The parties participated in a full day mediation with JAMS mediator Brad Winters that extended well into the evening hours. Thereafter, the parties negotiated the final settlement terms and negotiating, drafting, and revised the Settlement Agreement. Accordingly, the final terms of settlement were agreed to only after Class Counsel thoroughly vetted the claims and potential damages through the exchange of both informal and formal discovery and participated in lengthy arm's length negotiations.

### 2. The Experience and Views of Counsel

Class Counsel are experienced in consumer litigation, and have a keen understanding of the legal and factual issues involved in this case. Class Counsel fully endorse the settlement as fair, adequate, and reasonable. The fact that qualified and well-informed counsel endorse the settlement as being fair, reasonable, and adequate weighs heavily in favor of the Court approving the settlement. *See In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."). Notably, the experience of Class Counsel is both on the plaintiff and defense side, providing a unique perspective as to the reasonableness and fair value of the settlement here.

### 3. The Amount Offered in Settlement

The parties ultimately agreed on a resolution whereby each class member could receive 50 percent of the purchase price of the lifetime service contract that was cancelled. This is a fair resolution to the cancelled contracts, taken into account several facts, including: (1) the services already received as part of the service contract, thereby making a full disgorgement impractical; (2) the service contract terms themselves that limit the type of claims that are covered under the lifetime service contract; and (3) the overall degree of satisfaction class members had with the vehicles despite the loss of the lifetime service contract. For the Court's reference, the service contract excludes many items, and provides as follows:

> THE PLAN WILL NOT COVER, OR APPLY TO LOSS OR EXPENSE RESULTING FROM:
>
> * * *
>
> Repairs, Towing, Rental or Roadside Assistance necessary as a result of (a) failure to properly care for or maintain the vehicle; (b) fire, accident. abuse, vandalism, negligence or Act of God Including but not limited to any vehicle rendered Inoperable due to snow, Ice or flood; (c) failure to properly operate the vehicle; (d) vehicles that have been used or are being used for competitive speed events such as races or acceleration trials (e) pulling a trailer that exceeds the rated capacity of the vehicle or failure to adhere to the requirements for vehicles used to pull a trailer as outlined in the owner manual supplied by the manufacturer; (f) tampering with the emission system or with any parts that could affect that system (g) use of dirty fluids, or fuels. refrigerants or other fluids which are not recommended by the manufacturer (h) failure due to fluid contamination or sludge (i) modifications not approved or recommended by the manufacturer.

Given the exclusions provided for, as well as the fact that class members would have utilized some benefit under the plan, again making a full disgorgement of the purchase price unrealistic and unsupported by equity, the 50 percent individualized rebate makes is a fair compromise to the class.

### 4. The Stage of Litigation and Discovery.

The Parties thoroughly investigated and evaluated the case and engaged in sufficient discovery to support Settlement. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). Significant formal and informal discovery was conducted, including several motions to compel that had to be heard by magistrate judge McCormick. Following production of the ordered documents, the parties believed that the case may be amenable to mediation. Thereafter, with a full day of intense negotiation facilitated by an experienced and knowledgeable mediator, the case was clearly at a stage supporting Settlement. Wysocky Dec. ¶¶ 8-10.

### 5. The Presence of a Governmental Participant

No governmental agency is directly involved in this lawsuit or sought to intervene.

### 6. The Reaction of Class Members.

Because the claims deadlines have not yet passed, this factor cannot be fully evaluated as of the date of this filing. Class Members still have more than one month--until March 17, 2025, and there have not been any opt outs or requests for exclusion that have been mailed to the administrator. Notably, the deadline to do so has also passed, making the settlement without objection from any class member.

To date, 12 claims have been filed, representing 2 percent of the overall class. This is within the range typically seen for a claims made process (which given the duration of time between warranty purchase and the present, is the only realistic process that could be utilized). Indeed, other class actions have received final approval with a lower overall claims rate. *See Bayat v. Bank of the West* (N.D. Cal., Apr. 15, 2015, No. C-13-2376 EMC) 2015 WL 1744342 (approving with a claims rate of 1.9 percent). The *Bayat* court specifically compared the number of claims with the amount, noted that "for those class members who did file claims, the monetary relief available appears reasonable. Each class member who submitted a claim is due to receive approximately $151—not a trifling sum by any means . . . ." *Id*. at *5. Here, the proposed relief is massively greater, averaging $1,100 per class member. Just as final approval was given in *Bayat*, so should it be here as well. Moreover, it is anticipated that the claim rate may rise over the remaining month of the claim period.

Moreover, to place an exclusive focus on the claims rate would be not in the best interests of the class. The raw number of claims in a settlement is not usually, and certainly not always, a good gauge of the settlement's fairness. Many claims-made settlements involve conduct that the defendant believes was lawful and unobjectionable to most of its customers. Indeed, in this case, it was unobjectionable even to the preceding district court judge who dismissed the case. The plaintiff here challenged a practice that the defendant believes all or most of its customers find

reasonable, an alleged error and breach of contract that only 587 experienced in California. FCA, in agreeing to the claims made settlement, has offered to reimburse 50 percent of the purchase price to all class members who had a service contract cancelled, but requires each claimant to complete a reasonable claims process. This process is reasonable and assures protection against fraud given the lengthy period of time that has elapsed between when the warranties were sold and the present. If the defendant is right about the general satisfaction of its customer base, there will logically be few claims, and that would be a feature of the settlement, not a bug. If the defendant is wrong, the claim rate and overall cost of the settlement will be higher than the defendant expected, again a logical and bargained for risk as part of the settlement agreement.

**7.    The Settlement in the Product of Arm's Length Negotiations**

In addition to considering the above factors, the Ninth Circuit has indicated that the court should carefully review the settlement for any signs of collusion or conflicts of interest. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). "In the Ninth Circuit, a Court affords a presumption of fairness to a settlement, if: '(1) the negotiations occurred at arm's length; (2) there was sufficient discovery to allow counsel to act and the Court to review their actions in an informed manner; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *Rodriguez v. West Publishing Corp.*, No. CV- 05-3222 R (MCx), 2007 U.S. Dist. LEXIS 74849, *33 (C.D. Ca. Sept. 10, 2007).   All four of those factors are met, affording the presumption of fairness mandated by the Ninth Circuit. As detailed above, the Settlement is the result of lengthy, adversarial arm's-length negotiations between attorneys experienced in the area. It is a case that went up on appeal to the Ninth Circuit, and even after it returned to the district court still had to be fought aggressively through another motion to dismiss and motions to compel. In terms of the overall litigation conduct, it is difficult to imagine a set of facts that show an absence of collusion more than this case. Simply put, no signs of collusion or

- 11 -

conflicts of interest are present here, because there was no such collusion or conflicts of interest.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an Order finally approving the proposed settlement and its incorporated plan of allocation; directing payment of claims; awarding $368,181.76 in litigation costs and attorney's fees as separately moved for, and a service award in the amount of $5,000 to the Class Representative; and entering final judgment.

Dated:  February 14, 2025                KELLY, TROTTER & FRANZEN

_____
STEVEN J. WYSOCKY
Attorneys for Plaintiff
Donald Hall

# **CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2025, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

/s/ Katherine Maguire

_____
KATHERINE MAGUIRE