JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD HALL, individually and on behalf of the general public and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIAT CHRYSLER AMERICA US LLC aka FCA US LLC, formerly known as CHRYSLER GROUP LLC, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 8:21-cv-00762-SSS-DFMx<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

Before the Court are two motions: (1) a Motion for Final Approval of Class Action Settlement, *see generally* [Dkt. 114] ("Settlement Motion"); and (2) a Motion for Attorneys' Fees and Costs, *see generally* [Dkt. 112] ("Fees Motion"), filed by Plaintiff Donald Hall ("Plaintiff"). Defendant FCA US LLC ("Defendant") does not oppose either motion. Having considered the moving papers, as well as the arguments at the hearing on March 21, 2025, the Court *GRANTS* the Settlement Motion and GRANTS the Fees Motion.

///

///

## I. BACKGROUND

### A. Factual Background and Procedural History

Plaintiff is the initial purchaser and current owner of a 2008 Jeep Liberty. As part of that purchase, and for separate consideration, Mr. Hall purchased a lifetime service contract for the vehicle. In July of 2020, Plaintiff brought the vehicle to a Chrysler dealership in Signal Hill, California to repair the air conditioner. After the repair was completed, the dealership service manager informed Plaintiff that the repair would have been covered by the service contract, but that the service contract had been terminated by FCA because the vehicle had not been inspected according to a 5-year inspection requirement that was contained in the powertrain warranty. Plaintiff had several other repairs that he contends should have been covered under the terms of the service contract, but which were not due to the contract being voided by FCA.

This civil action was filed on April 21, 2021, and originally included several claims for relief, including for breach of contract, breach of warranties, civil RICO, and violation of California's Unfair Competition Laws. After FCA moved to dismiss, the Court granted their motion with prejudice. An appeal then followed to the Ninth Circuit Court of Appeals, which reversed as to the breach of contract claim in an unpublished decision.

A First Amended Complaint was filed that contained claims for both breach of contract and breach of warranty. [Dkt. 42]. After FCA again moved to dismiss, the District Court granted it in part, finding that the claims were duplicative. [Dkt. 54]. As such, the case proceeded forward on a single cause of action for breach of contract.

On January 16, 2024, the Parties attended mediation with Brad Winters, Esq. of JAMS, an experienced and respected national mediator on issues involving automotive cases. Following a full day of mediation, the Parties reached an

agreement. The Parties thereafter continued to negotiate at arms' length the balance of the terms contained in the long-form Settlement Agreement.

### B. Settlement Terms

The parties agreed that upon receipt of a valid claim, FCA will reimburse one half of the amount the Claimant paid or had paid on their behalf for the purchase of the lifetime service contract. In addition, class representative Donald Hall would receive a service award of $5,000, that the settlement administrator expenses would be paid directly by FCA, and that FCA would pay class counsel and amount up to $375,000, for fees, costs and expenses, inclusive. Counsel has subsequently filed a motion for attorney's fees and costs in the amount of $368,181.76. The average amount of each claim is approximately $1,100 for the estimated class members of the California class.

The Court granted preliminary approval of the class action settlement in its September 18, 2024, order. [Dkt. 110.] Thereafter, notice was sent as directed by the class administrator, Kroll Settlement Administration, LLC, including creation of a settlement website: https://lifetimecontractsettlement.com/. A toll-free number was also created where class members could call with any questions: (833) 739-5988.

Through efforts of the class administrator and deduplication efforts, it was determined that the class size was 536, with mailings going out to all 536 individuals. Of the 536, 18 were returned as undeliverable, which from that group, updated address searches were run that produced new addresses for 12 class members. Additional mailings went out to those 12 new addresses. Given this, the Court finds that 530 out of 536 class members actually received notice, for a rate of 98.9 percent which is above the national average. There have been no objections or exclusions.

///

///

///

## II. FINAL APPROVAL

### A. Overview of the Settlement Agreement

The Settlement Agreement resolves claims between Defendant and the settlement class ("Class" or "Class Member(s)"), defined as: "All persons in California who purchased a lifetime vehicle service contract for a Chrysler, Dodge or Jeep branded vehicle, and had the contract terminated based on their failure to comply with the inspection terms of the lifetime limited powertrain warranty covering the vehicle."

The Settlement Agreement provides for a refund payment of 50 percent of the original purchase price of the warranty to each class member that files a valid claim. In addition, as discussed above, it provides that class representative Donald Hall would receive a service award in an amount to be approved by the Court, that the settlement administrator expenses would be paid directly by FCA, and that FCA would pay class counsel and amount up to $375,000, for fees, costs and expenses, inclusive. Any award of attorney's fees and costs would not have any negative impact or reduction on a class member's payment. By filing a claim, the class member would release Defendant as follows:

> "Released Claims" means any and all claims, causes of action, demands, debts, suits, liabilities, obligations, damages, actions, rights of action, remedies of any kind and/or causes of action of every nature and description, whether known or unknown, asserted or unasserted, foreseen or unforeseen, regardless of any legal theory, existing now or arising in the future, by Plaintiff and any and all Class Members relating to the termination or cancellation of a lifetime service contract because of FCA US's termination of a lifetime limited powertrain warranty, whether arising under statute (including a state lemon law), rule, regulation, common law or equity, and including, but not limited

to, any and all claims, causes of action, rights or entitlements under any federal, state, local or other statute, law, rule and/or regulation, any claims relating to violation of California Business and Professions Code Sections 17200-17209, California Business and Professions Code Section 17500, or the California Consumer Legal Remedies Act (California Civil Code Section 1750-1784), any consumer protection, consumer fraud, unfair business practices or deceptive trade practices laws, any legal or equitable theories, any claims or causes of action in tort, contract, products liability, negligence, fraud, misrepresentation, concealment, consumer protection, restitution, quasi contract, unjust enrichment, express warranty, implied warranty, secret warranty and/or any injuries, losses, damages or remedies of any kind, in law or in equity, under common law, statute, rule or regulation, including, but not limited to, compensatory damages, economic losses or damages, exemplary damages, punitive damages, statutory damages, restitution, recovery of attorneys' fees or litigation costs, or any other legal or equitable relief.

Because there was no request for an exclusion, all class members have waived the Released Claims against the Defendant.

### B. Legal Standard

A court may finally approve a class action settlement "only after a hearing and only on finding that [the settlement] . . . is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). Approval or rejection of a settlement agreement is committed to the district court's sound discretion. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In determining whether a settlement is fair, reasonable, and adequate, the court must balance a number of factors:

ORDER GRANTING FINAL APPROVAL

[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of proceedings; [6] the experience and views of counsel; [7] the presence of a government participant; and [8] the reaction of the class members to the proposed settlement.

*Id.*; *see also Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list").

Additionally, under Rule 23(e), the Court must "scrutinize[e] the fee arrangement for potential collusion of unfairness to the class" by analyzing three factors: (1) whether counsel "receive[d] a disproportionate distribution of the settlement;" (2) whether the parties agreed to a "clear sailing arrangement;" and (3) whether the settlement includes a "kicker" or "reverter" clause. *See Briseño v. Henderson*, 998 F.3d 1014, 1023, 1026 (9th Cir. 2021).

The district court must approve or reject the settlement—as a whole—after comprehensively exploring all factors. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The court may not delete, modify, or rewrite particular provisions of the settlement. *See id.* A court should be cognizant that a settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027. In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v.*

*Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

### C. *Hanlon* Factors

#### 1. Strength of Plaintiff's Case

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010) (internal quotation marks omitted). This factor generally weighs in favor of approval when a plaintiff must overcome barriers to make her case. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010)

As attested by Class Counsel, this case was not without its difficulties or challenges, having already been dismissed once and then reinstated by the Ninth Circuit Court of Appeal. Additionally, the Ninth Circuit opinion did raise the prospect of the interpretation being an issue of fact for a jury to decide, as it cited the case of *Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1351 (2004) (interpreting an ambiguous contract may involve a question of fact). Additionally, FCA US, through its counsel, also presented several significant defenses to the claims as well as good faith objections to Plaintiff's ability to certify the class. FCA US maintained that resolution of these issues would require individualized analysis of the nature of the Class members' basis for cancellation such that these issues would predominate and certification would be unlikely. For this proposition, they cited to the terms of the service contract, which states:

THE PLAN WILL NOT COVER, OR APPLY TO LOSS OR EXPENSE RESULTING FROM:

* * *

Repairs, Towing, Rental or Roadside Assistance necessary as a result of (a) failure to properly care for or maintain the vehicle; (b) fire, accident, abuse, vandalism, negligence or Act of God Including but not

limited to any vehicle rendered Inoperable due to snow, Ice or flood; (c) failure to properly operate the vehicle; (d) vehicles that have been used or are being used for competitive speed events such as races or acceleration trials (e) pulling a trailer that exceeds the rated capacity of the vehicle or failure to adhere to the requirements for vehicles used to pull a trailer as outlined in the owner manual supplied by the manufacturer; (f) tampering with the emission system or with any parts that could affect that system (g) use of dirty fluids, or fuels, refrigerants or other fluids which are not recommended by the manufacturer (h) failure due to fluid contamination or sludge (i) modifications not approved or recommended by the manufacturer.

The settlement was therefore a product of Class Counsel weighing several factors, including the inherent difficulty of the case. This factor weighs in favor of granting final approval.

### 2. Risk, Expense, Complexity, and Duration of Further Litigation

The second factor in assessing the fairness of the proposed settlement is the complexity, expense, and likely duration of the lawsuit if the parties had not reached a settlement agreement. *See Officers for Justice*, 688 F.2d at 625.

Plaintiff argues that, without a settlement, the parties would need to endure expensive and protracted litigation that could have resulted in no recovery at all for certain claims. If litigation were to proceed, Plaintiff would need to conduct further discovery, move for class certification, oppose Defendant's likely motion for summary judgment, and, if successful, proceed to trial.

Accordingly, because the settlement eliminates the delay, costs, and uncertainty of further litigation, this factor supports final approval. *See Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 331 (N.D. Cal. 2014) ("This factor supports final

approval of this settlement because, without a settlement, Plaintiffs would risk recovering nothing.").

### 3. Risk of Maintaining Class Action Status Through Trial.

As stated above, Plaintiff recognizes that resolution of the class claims would have likely required individualized inquiries and posed manageability concerns that could have threatened class action status through trial. The fact-specific questioning and discovery regarding Defendant's policies and practices over an extended period of time may have given rise to individualized issues. Accordingly, this factor also supports final approval

### 4. Amount Offered in Settlement

The fourth factor in assessing the fairness of the proposed settlement is the amount of the settlement. "[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624 (internal quotations omitted). The Ninth Circuit has explained that "the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by negotiators." *Id*. at 625. "Rather, the settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation." *Contreras v. Armstrong Flooring, Inc.,* No. CV 20-3087 PSG (SKx), 2021 WL 4352299, at *5 (C.D. Cal. July 6, 2021).

In evaluating this factor, the Court finds the amount offered in settlement reasonable. It provides for a return of 50 percent of the purchase price of the service contract. Weighing the clear risks of ongoing litigation against the recovery the Settlement Agreement provides for the Class, the amount offered in settlement is reasonable. *See Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG (CWx), 2014 WL 4090564, at *12 (C.D. Cal. Apr. 29, 2014) (noting that while settlements will not make most class members completely whole, class members must "discount their

claims to obtain a certain and timely recovery, rather than bear the significant risk and delay associated with further litigation"); *Vasquez*, 266 F.R.D. at 489 (noting that "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement" is a relevant factor). Accordingly, this factor favors final approval.

### 5. Extent of Discovery Completed.

This factor requires the Court to gauge whether Plaintiff had sufficient information to make an informed decision about the merits of her case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases," and the more heavily this factor weighs in favor of final approval. *Young v. Polo Retail, LLC*, No. C 02- 4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks omitted).

In this case, the parties engaged in extensive discovery that included the Plaintiff filing numerous motions to compel. This case also has the unique feature of having an opinion from the Ninth Circuit guide the parties in their arguments and settlement postures. Accordingly, the Court is confident that Plaintiff had enough information to make an informed decision about the settlement after arm's-length negotiation and mediation based on the strengths and weaknesses of the case. *See Glass v. UBS Fin. Servs.,* No. C 06-4068 MMC, 2007 WL 221862, at *4–5 (N.D. Cal. Jan. 26, 2007) (reasoning that the parties' having undertaken informal discovery prior to settling supports approving the class action settlement). As such, this factor weighs in favor of granting final approval.

### 6. Experience and Views of Class Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). While counsel's

views are instructive, they do not entitle the plaintiff to a presumption of fairness. *See Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).

Here, counsel has significant experience in the area of law per the declarations of plaintiff's counsel. The Court is satisfied that this experience has allowed Class Counsel to evaluate the merits of the claims and risks associated with taking the case through trial, and another appeal. The Court accordingly credits Class Counsel's determination that the settlement is fair and reasonable, and finds that this factor weighs slightly in favor of final approval.

### 7. Presence of a Government Participant.

Because there is no government entity directly participating in the case, this factor is not relevant to the analysis.

### 8. Reaction of the Class.

In evaluating the fairness, adequacy, and reasonableness of settlement, courts also consider the reaction of the class to the settlement. *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003), overruled on other grounds by *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010); *Nat'l Rural Telecomms. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."); *see also Arnold v. Fitflop USA, LLC*, No. CV 11-0973 W (KSC), 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (concluding that the reaction to the settlement "presents the most compelling argument favoring settlement").

Here, notices were sent to 536 class members. Six were returned as undeliverable. This provides a rate of class members that likely received direct notice of the settlement of 98.9%. No class member filed either an objection or a request to be excluded, with at least 23 filing claims with the class administrator. The Court

finds that this positive reaction weighs in favor of final approval.

### 9. Balancing the Hanlon Factors.

Having considered all of the Hanlon factors, the Court finds that all relevant factors favor final approval.

### D. *Briseño* Factors

In *Briseño*, the Ninth Circuit stressed that, before approving class action settlements, district courts must look for signs that class counsel has pursued their own self-interests in the negotiations. *See* 998 F.3d at 1023. The court identified three "red flags" that are indicative of collusion between class counsel and the defendant: (1) if class counsel receives a disproportionate distribution of the gross settlement amount; (2) if there is a "clear-sailing" agreement; and (3) if any of the gross settlement amount reverts to the defendant. *See id.* The Court discusses each "red flag" in turn.

Here, the Court does not find any evidence of collusion or self-interested dealing by class counsel. Given the specifics and nuances of the case, the Court has adopted the lodestar method for calculating attorney's fees, which is not depleted from the class recovery. While there is a clear-sailing agreement with respect to the motion for attorney's fees, because it does not deplete or diminish any class member's recovery, there is no evidence to outweigh the Court's finding that this settlement is the result of lengthy, adversarial arm's-length negotiations between attorneys experienced in the area. It is a case that went up on appeal to the Ninth Circuit, and even after it returned to the district court still had to be fought aggressively through another motion to dismiss and motions to compel. Relative to the last *Briseño* factor, because each claim is individualized and specific, there is no gross settlement amount available for reversion. Rather, each class member's claim is determined by a calculation of 50 percent of each member's purchase price.

Having considered each of the *Briseño* factors, the Court finds that the

Settlement Agreement, on balance, was not collusive or based on inappropriate self-interest of Class Counsel.

### III. CONCLUSION

Having concluded that the *Hanlon* factors favor final approval, and that the Settlement Agreement is appropriate under *Briseño*, the Court **GRANTS** Plaintiff's Motion for Final Approval of the Settlement Agreement. [Dkt. 114].

Without affecting the finality of this judgment in any way, this Court hereby retains exclusive jurisdiction over Defendant and the Class Members for all matters relating to the litigation, including the administration, interpretation, effectuation, or enforcement of the Settlement Agreement and this order.

This order closes the case.

IT IS SO ORDERED.

Dated: April 1, 2025

SUNSHINE S. SYKES
United States District Judge